FRANKLIN OCAMPO
REG.NO. 45871-053
FCI MCDOWELL
PO BOX 1009
WELCH, WV 24801

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ JUN 26 2017 ★
BROOKLYN OFFICE

TO: JUDGE, JOHN GLEESON
SUBJECT: PROFFER AGREEMENT

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

FRANKLIN OCAMPO,　　　　　　：　　Cr.No.: 95-CR-750(JG)
　　Movant,　　　　　　　　　：
　　　　　　　　　　　　　　　：
v.　　　　　　　　　　　　　 ：
　　　　　　　　　　　　　　　：
UNITED STATES OF AMERICA,　 ：
　　　Respondent.　　　　　　：
........................................................

## PRO SE MOTION REQUESTING COURT TO ORDER GOVERNMENT TO PRODUCE PROFFER AGREEMENT

COMES NOW, Movant Ocampo, in pro se capacity, and files this Pro Se Motion Requesting Court To Order Government To Produce Proffer Agreement for all of the reasons stated herein.

### I. REASON TO GRANT MOTION

Movant("Ocampo")is currently serving a term of "Life" imprisonment, after being convicted by a New York jury. However, before sentence was imposed, Movant entered into a proffer agreement with the government, Kelly A. Moore, Assistant United States Attorney. During the meeting that concerned the proffer agreement, Movant and Ms. Moore did discuss that if Movant would advise the government of Movant's own misconduct, that it would advocate for a 48 month term of imprisonment. See(DECL. of Ocampo, passim),attached hereto in support.

1

During this meeting, Movant signed the proffer agreement and was apprised by the government that Movant would be given a certain percentage of reduction for his proffer statement(s). To date, Movant has not been provided any reduction in favor of the proffer agreement. After Movant and the government had made the proffer agreement, Movant recalls that Movant, the government, the Tennessee State attorney, several Tennessee State Agents and Movant's federal attorney-all gathered where Movant provided valuable information to them in aide of them solving the murder(s). See(DECL. of Ocampo, passim)in support.

Movant also attaches relevant portions of prior proceedings herewith, in some aid to the court.[1]

## IN CONCLUSION

In conclusion, this honorable court should GRANT the current motion and order the government to produce the previous proffer agreement for all of the reasons stated above.

Respectfully submitted,

Franklin Ocampo
pro se

---

[1] Movant has attached portions from prior proceedings in this court that involve discussions about the stated proffer agreement taken with the government before sentencing in federal court. The attachments are labeled as ATTACHMENTS in support

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

FRANKLIN OCAMPO,
    Petitioner,

Cr. No. 95-CR-750(JG).

vs.

UNITED STATES OF AMERICA,
    Respondent.

..............................................................

## PRO SE DECLARATION OF FRANKLIN OCAMPO

   I, Franklin Ocampo, having-first-hand knowledge of My case, do swear under penalty of perjury that the foregoing is true and correct pursuant to 28 U.S.C. §1746.

1. I, Franklin Ocampo do depose and says that:

2. After I was found guilty by the jury, I insisted to My attorney that I wanted to talk to the prosecutor to assist My case before sentencing;

3. thereafter, Me, My attorney and several agents from Tennessee discussed conduct of others who committed crimes;

4. I rendered valuable information to the authorities and was advised before rendering the information that I would plead to a 48 month sentence upon the information provided by Me;

5. To date, I have not benefitted from the proffered agreement;

6. the information here, is limited due to confidentiality;

7. I am competent to testify the same in open-court;

8. It shall be all.

Respectfully submitted,



Franklin Ocampo
pro se

FRANKLIN OCAMPO-PRO SE MOTION REQUESTING
PROFFER AGREEMENT

ATTACHMENTS:
IN SUPPORT

P.4 of transcripts
P.8,LINES 15-25 of HEARING
P.22,lines 22-25over to page 23,LINES 1-7

1  whatsoever. Mr. Friedberg and I don't recall any type of
2  oral agreement having been suggested. Those negotiations
3  would have been extremely preliminary in terms of oral offer
4  of any sort. There was definitely never any plea agreement
5  offer sent out. It would have probably have been, as I
6  recall it, an 11(e)(1)(C) type scenario, which would have
7  required going to a committee at that point.
8        I think, as I recall it vaguely, I may have had
9  conversations with Pagan saying why don't you give me an idea
10 that I can bring to the committee what he would accept. I'm
11 not going to go to the committee unless I have a number. He
12 said, I believe, what kind of numbers are you talking about
13 and I said it would have to be at least 20 or 25 and he then
14 never came back to me and said my client would be interested
15 to make it worthwhile for me to go to any type of committee
16 to sort of propose that. He came back to me, said his client
17 was absolutely not interested in a plea.
18        The only thing that is apparently confusing
19 Mr. Ocampo, continues to confuse him, is a standard proffer
20 agreement that was entered into after he was convicted by the
21 jury and that was in no way a plea agreement as the court is
22 aware, just a standard proffer agreement. I have not been
23 able to locate that. Mr. Lowenthal might with whatever he
24 retrieves in closed files. That would be provided to
25 Mr. Ocampo pursuant to the court's request.

1    THE COURT: Would you have cooperated?

2    THE WITNESS: Of course because I didn't commit the
3 crime.

4    THE COURT: Would you have pled guilty?

5    THE WITNESS: The problem is that I didn't
6 understand or don't understand -- I would have pled guilty out
7 of fear to not get more time.

8    THE INTERPRETER: I'm sorry, the interpreter
9 corrects himself for the record.

10   I would have pled guilty in order to be able to
11 return to my children and to see my family once again.

12   THE COURT: Is there any other discussion you had
13 with Mr. Pagan about plea offers and what you already
14 described?

15   THE WITNESS: After having lost the trial, I had an
16 appointment, I had been trying to reach him on the telephone
17 with the United States Attorney. She told me that I should
18 get in touch with my attorney. I got in touch with my
19 attorney and I said to him that I wanted to clarify my
20 situation. They set up a date for the appointment and on that
21 day, I joined the prosecutor and the other United States
22 Attorneys or prosecutors from Tennessee where the people that
23 committed the crime were. There were also police, there were
24 DEA and Mr. Pagan said to me on that day, he said to me we're
25 going to sign a plea agreement from 48 months or of 48 months

1            Anything further?

2            I think I understand the difference in versions of

3    what happened.

4            THE PETITIONER:  No.

5            THE COURT:  Anything further of Mr. Pagan from the

6    government?

7            MS. MOORE:  No, your Honor.

8            THE COURT:  You can step down.  You are excused.

9            (Witness excused.)

10           THE COURT:  Anything you want to add?

11           I'm going to consider the questions you posed to Mr.

12   Pagan as part of your testimony because in a certain respect

13   they were simply assertions of fact which I will deem to be

14   testimony if given under oath.

15           Anything else you want to add on the issue of your

16   decision whether to testify and the advice you got with regard

17   to pleading guilty and what you faced if you went to trial and

18   blew trial as they say, got convicted?  Do you want to add

19   anything?

20           THE PETITIONER:  Yes, I would.

21           THE COURT:  Go ahead.

22           THE PETITIONER:  If Mr. Pagan had gotten from me an

23   interview with the prosecutor, I would have accepted it.  For

24   me, that interview, I would have accepted since I myself

25   called up asking for an interview with the government to go an

1  proffer, to proffer about my guilt, not about the kidnapping
2  or the murder.
3       THE COURT: Ms. Moore, let me just try to clear up
4  one little anomaly in Mr. Ocampo's testimony. He mentioned
5  the plea agreement.
6       Was there a written proffer agreement post-trial?
7       MS. MOORE: Yes, there was.
8       THE COURT: I'm going to take the remaining issues,
9  the issues that remain in this 2255 motion under advisement.
10 I'll issue another memorandum and order that decides them and
11 I will send them to you, are you still in Schukill?
12      THE PETITIONER: Yes.
13      May I say something?
14      THE COURT: Yes, you may.
15      THE PETITIONER: In my documents, among them were my
16 records of what I've been doing in prison, the programs and
17 other things regarding that. I wanted to show those to you.
18      THE COURT: What kind of programs have you been
19 doing?
20      THE PETITIONER: I did the GED, the program on
21 mathematics, science, geography, typing, health matters.
22 Various courses that I have found in prison during the time
23 that I've been there.
24      THE COURT: Have you gotten your GED?
25      MS. MOORE: GD?